NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LEMUS., | :|
| Plaintiff, | : |
| v. | : Civil No. 20-3344 (RBK/AMD) |
| MCALEENAN, ET AL., | : **OPINION** |
| Defendants. | : |

**KUGLER**, United States District Judge:

Presently before the Court is the Defendant's Motion to Dismiss the Complaint (Doc. No. 13) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

In this case, the Court must decide whether it has subject matter jurisdiction over an action seeking to compel the United States Citizenship and Immigration Service ("USCIS") to adjudicate an application for a U visa that has been pending for over two years.

### A. Legal Framework

The Victims of Trafficking and Violence Prevention Act (VTVPA) of 2000 was enacted to strengthen the ability of law enforcement agencies to investigate and prosecute crimes of domestic violence, sexual assault, and trafficking of noncitizens while also offering protections to victims of such crimes without the immediate risk of being removed from the country. Pub. L. No. 106-386, § 1513(a)(2)(A). In furtherance of this goal, Congress created a new nonimmigrant

1

visa classification—the U visa—within the Immigration and Nationality Act ("INA"). *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464. The U visa provides temporary legal status to victims of rape and other specified crimes who have cooperated, or are likely to cooperate, in the investigation and prosecution of these crimes. *See* 8 U.S.C. § 1101(a)(15)(U)(i). Eligible victims are allowed to temporarily remain and work in the United States for four years, and if certain conditions are met, may apply for adjustment to lawful permanent resident status after three years. *Contreras Aybar v. Sec'y United States Dep't of Homeland Sec.*, 916 F.3d 270, 272 (3d Cir. 2019).

Certain U-Visa benefits also extend to qualifying family members. Persons who are seeking or have already obtained permanent resident status based on their receiving a U Visa may seek that status for a qualifying family member under 8 U.S.C. § 1255(m)(3). *Id.* Family members eligible to be derivative U Visa recipients include: (1) unmarried children under the age of twenty-one; (2) spouses; (3) parents if the U-Visa holder is under twenty-one years of age; and (4) unmarried siblings (under eighteen years of age) of U Visa recipients who are under twenty one. 8 C.F.R. § 214.14(a)(10). Accepted derivative relatives have the right to both live and work in the U.S.

Congress has limited the number of U-Visas that may be issued to 10,000 per year. 8 U.S.C. § 1184(p)(2)(A). However, this cap applies only to "principal aliens" and does not include derivative relatives. *Id.* § 1184(p)(2)(B). Anticipating that USCIS would begin to receive meritorious U Visa petitions exceeding the annual statutory cap, USCIS published a rule creating a regulatory waiting list procedure ("the waiting list"). 8 C.F.R. § 214.14. Pursuant to this process, once the 10,000 statutory cap has been reached for the fiscal year, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 non-immigrant status must be placed

on a waiting list." *See* 8 C.F.R. § 214.14(d)(2). Petitioners, and qualifying family members, that are placed on the waiting list will be granted deferred action by USCIS. *Id.*

### B. Factual Background

Plaintiffs S.L., a foreign nation of El Salvador, and R.L., a foreign national of Guatemala, were wed in a civil union in Westville, New Jersey in November of 2006. (Doc. No. 1, Compl. at ¶ 1). In 2013, their eight-year-old daughter was sexually assaulted by S.L.'s brother. (*Id.* at ¶ 15). The Plaintiffs contacted the authorities and the brother, F.L., was charged with two counts of sexual assault on a minor and one count of child endangerment. (Doc. No. 14, Pls. Brief in Opposition at ¶ 13). In retaliation for contacting the authorities, the brother allegedly ousted the Plaintiffs as undocumented immigrants by sending an anonymous letter to Immigration Customs and Enforcement. (*Id.* at ¶ 14). As a result, G.L. was served with a Notice to Appear before the Executive Office for Immigration Review in Newark, New Jersey on January 9, 2014. (Doc. No. 1, Compl. at ¶ 14).

Because Plaintiffs cooperated with law enforcement and aided in the criminal investigation of the sexual assault, they sought to invoke the U nonimmigrant status, colloquially known as the U visa. They received a requisite certification from the Gloucester County Prosecutor's Office in October of 2017 and filed a formal petition for U visas on January 25, 2018. (Doc. No. 1, Compl. at ¶¶ 1, 15). Plaintiff S.L. is the primary beneficiary of the application and G.L. is the derivative beneficiary. (*Id.* at ¶ 1). Although they have filed a formal petition for a U visa, USCIS processing times indicate that their petition will not be adjudicated until after Plaintiff G.L. is set to appear before the Executive Office of Immigration Review for a hearing in his removal case on April 8, 2021. (*Id.* at ¶ 14).

### C. Procedural History

3

On March 27, 2020, Plaintiffs filed the complaint seeking relief under the Declaratory Judgment Act, 28 U.S.C. 2201 and 2202, to compel USCIS to adjudicate their U visa petitions. (Doc. No. 1). Plaintiffs also claimed that USCIS's failure to adjudicate their petitions violated the APA and the Immigration and Nationality Act and denies them due process and equal protection rights under the Fifth Amendment. (*Id.*). Defendants' moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. (Doc. No. 13).

## II. LEGAL STANDARD

### A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is the Court's authority to hear a case. If a case, as presented by the plaintiff, does not meet the requirements of subject matter jurisdiction or if it is otherwise barred by law, then the Court must dismiss the plaintiff's action.

The plaintiff generally has the burden of establishing that the court has subject matter jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). The defendant can challenge whether the plaintiff has done so, through either a facial challenge or a factual challenge to the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

In a facial challenge, the court looks to the face of the complaint and accepts as true the facts alleged by the plaintiff. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). If the court cannot conclude, based on face of the complaint, that jurisdictional requirements are met, then the court must dismiss the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other

words, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Thus, "'[t]hreadbare recitals of the elements of [jurisdiction], supported by mere conclusory statements, do not suffice.'" *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (quoting *Iqbal*, 556 U.S. at 678). In a factual challenge, however, the plaintiff's factual allegations are not presumed to be true, and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Hartig Drug Co.*, 836 F.3d at 268. A factual challenge may only be raised after an answer has been filed. *Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018). Thus, any motion to dismiss for lack of subject matter jurisdiction filed prior to an answer is, by default, a facial challenge. *Id.*

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The threshold issue here is whether we have subject matter jurisdiction to hear this matter. Plaintiffs claim this Court has subject matter jurisdiction to review their claims of undue delay under 28 U.S.C. § 1331 and § 1346(a)(2), the Declaratory Judgment Act, the Administrative Procedure Act, and the Mandamus Act. Defendants argue this Court does have subject matter jurisdiction under 28 U.S.C. § 1346(a)(2) because it only grants jurisdiction over claims against the United States for money damages, which Plaintiffs do not seek. Likewise, Defendants argue our jurisdiction cannot be based solely on Section 1331 or the Declaratory Judgment Act because each requires an independent source of jurisdiction—that is, federal question or diversity jurisdiction. Based on this premise, Defendants contend this Court does not have subject matter jurisdiction because both the APA and the Mandamus Act do not confer federal question jurisdiction in the presence of agency discretion. Plaintiffs response in

5

opposition is cursory. They contend, in a conclusory fashion, that this Court has jurisdiction under the APA and the Mandamus Act due to the unreasonable delay caused by USCIS. Defendants' argument wins the day.

### i. 28 U.S.C. § 1346(a)(2)

28 U.S.C. § 1346(a)(2) provides "[t]he district courts shall have original jurisdiction . . . of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . ." This provision, known as the Little Tucker Act, plainly gives district courts jurisdiction over claims against the United States for money damages of less than $10,000 that are founded on the Constitution. *Wilkens v. United States*, No. 03-CIV-1837, 2004 WL 1198138, at *3 (D.N.J. Feb. 19, 2004). However, the Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States. *Richardson v. Morris*, 409 U.S. 464, 465 (1973). "The reason for the distinction flows from the fact that the Court of Claims has no power to grant equitable relief and the jurisdiction of the district courts under the Act was expressly made 'concurrent with the Court of Claims.'" *Id.* (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 557 (1962) (Harlan, J., announcing the judgment of the Court)). Therefore, because Plaintiffs do not seek monetary relief, the Little Tucker Act does not confer jurisdiction on this Court. *Wilkens v. United States*, No. 03-CIV-1837, 2004 WL 1198138, at *3 (D.N.J. Feb. 19, 2004) (concluding it lacked jurisdiction because the plaintiff was not seeking monetary relief under the Little Tucker Act).

### ii. 28 U.S.C. § 1331 and the Declaratory Judgment Act

Both the Declaratory Judgment Act and the federal question statute are not independent sources of federal jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see generally* 28

U.S.C. § 1331. To have a claim under the Declaratory Judgment Act, a federal court must have jurisdiction under another federal statute. *Singh v. Holder*, No. CIV.A. 14-387 ES JAD, 2015 WL 1399055, at *4 (D.N.J. Mar. 25, 2015). Similarly, the federal question statute provides federal courts with subject matter jurisdiction only in cases arising under some other source of federal law. *Id.* Plaintiffs invoke the Administrative Procedure Act ("APA") and the Mandamus Act as independent sources of federal source that confer jurisdiction on this Court under 28 U.S.C. § 1331.[1]

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts*." Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). Thus, although the APA does not provide an independent basis for subject matter jurisdiction, federal courts may entertain challenges to unreasonably delayed agency action on the basis of § 1331. *Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see* 5 U.S.C. § 706(1) (Federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed."). Put differently, a court has jurisdiction under 28 U.S.C. § 1331 over a claim that an agency has violated the APA, such as unreasonably delayed agency action. *Liu v. Gonzales*, No. CIV.A.07-1797MLC, 2007 WL 2916511, at *6 (D.N.J. Oct. 5, 2007). There are limits to this jurisdiction, however. A court only has jurisdiction to compel an agency to act within a certain time period under the APA when the agency is compelled by law to act within that period of time. *Id.* Furthermore, the APA does not apply to agency action that is committed by law to the discretion of the agency. *Id.*

---

[1] Plaintiff also argues that the failure to adjudicate the U visa constitutes a deprivation of his due process and equal protection rights under the Fifth Amendment. This is a stilted contention and assumes Plaintiff is entitled to the U visa as a matter of right. Such is not true. *Shukhrat v. Sec'y, U.S. Dep't of Homeland Sec.*, 634 F. App'x 880, 884 (3d Cir. 2015).

The Mandamus Act independently provides federal courts with jurisdiction to "compel an officer or employee of the U.S. or any agency thereof to a perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, both the Mandamus Act and the APA do not apply in the presence of discretionary actions. *Singh v. Holder*, No. CIV.A. 14-387 ES JAD, 2015 WL 1399055, at *5 (D.N.J. Mar. 25, 2015); *Costa v. Chertoff*, No. CIV.A. 07-2467, 2007 WL 4456218, at *3 (E.D. Pa. Dec. 11, 2007) (explaining that for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive). Because the Mandamus Act and the APA are co-extensive, our analysis with respect to the latter also applies to the former.

The APA establishes a "basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967)). This presumption can be rebutted by showing that: (1) the relevant statute precludes review; or (2) the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1) and (2). Defendant raises both exceptions here.

Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) rebuts this presumption because it prohibits judicial review of any decision or action of the Secretary of Homeland Security that is committed to his or her discretion under the subchapter. According to Defendants, Section 1184(a)(1)—which is included in the "subchapter—commits to the Secretary of Homeland Security's discretion the implementation of standards and processes for U nonimmigrant statute adjudications, and therefore this Court does not have jurisdiction to review the pace of adjudicating U visas.[2] This argument also logically invokes the second exception—agency action

---

[2] It should be noted that the statutory text of 8 U.S.C. § 1184 actually refers to the Attorney General, not the Secretary of Homeland Security. But as the Government points out, 6 U.S.C. 557 supplants the phrase "Attorney

8

committed to agency discretion by law—and the Government contends that this discretion bars judicial review as well. Even though the Government invokes both exceptions to judicial review, its argument has tethered them together. Thus, these exceptions will be addressed in tandem because an answer to the discretionary exception solves the statutory exception.

1. **Whether 8 U.S.C. § 1252(a)(2)(B)(ii) Precludes Judicial Review**

8 U.S.C. § 1252(a)(2)(B)(ii) provides "no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). By its plain terms, this provision precludes judicial review if there is: (1) a decision or action by USCIS; and (2) the authority to make such a decision or take such an action is specified in Subchapter II to be in the discretion of the Secretary of Homeland Security. *Singh v. Holder*, No. CIV.A. 14-387 ES JAD, 2015 WL 1399055, at *6 (D.N.J. Mar. 25, 2015). Accordingly, the Court must first determine whether Plaintiffs are challenging a "decision or action," and the relevant statutory provision or provisions under Subchapter II.

Here, although Plaintiff appears to be arguing that USCIS failed to adjudicate his petition, his claim is really one of unreasonable delay.[3] This is a challenge to an "action" under 8 U.S.C. § 1252(a)(2)(B)(ii). *See Safadi v. Howard*, 466 F.Supp.2d 696, 700 (E.D.Va.2006) (holding that "decision or action" encompasses "the ongoing adjudication process and the pace at

---

General" with "Secretary of Homeland Security" where the underlying adjudicative functions were transferred to the Department of Homeland Security.

[3] Not only does Plaintiff fail to provide any allegations to support his contention that USCIS failed to adjudicate his petition but the Complaint and reply brief actually contradict this allegation. Plaintiff notes in his Complaint that "[a]ccording to USCIS processing times, the plaintiffs' U visa [derivative] application will not be adjudicated prior to the conclusion of Mr. Gomez-Lima's removal case." This shows that there is not an outright refusal but rather a delay in adjudication. Moreover, Plaintiff asserts in his reply brief that he has been placed on the waiting list. (Doc. No. 14 at ¶ 21). This also demonstrates that USCIS is not refusing to adjudicate Plaintiff's petition but rather is in the process of doing so.

9

which that action proceeds"); *see also Serrano v. Quarantillo*, No. 06–05221, 2007 WL 1101434 (D.N.J. Apr.9, 2007) (endorsing the conclusions of *Safadi*). Accordingly, the Court must next determine whether "the authority for" the pace of processing applications is "specified under this subchapter to be in the discretion of the . . . Secretary of Homeland Security."

The Government refers to several statutory and regulatory provisions. We can quickly dispose of the regulatory provisions because judicial review of discretionary decisions is barred under U.S.C. § 1252(a)(2)(B)(ii) "only when Congress *itself* set out the Attorney General's discretionary authority in the *statute*." *Kucana v. Holder*, 558 U.S. 233, 247 (2010).[4] Therefore, it is the statutory language that is material. Here, it is Section 1184(a)(1).[5]

Section 1184(a)(1) states "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the [Secretary of Homeland Security] may by regulations prescribe." The plain language of this statute clearly grants discretion over the promulgation of regulations for adjudicating U visas which "necessarily includes" discretion over the pace of adjudication. *Singh v. Holder*, No. CIV.A. 14-387 ES JAD, 2015 WL 1399055, at *8 (D.N.J. Mar. 25, 2015). Indeed, if "the discretion to promulgate regulations did not include discretion over the pace of adjudication, 'the grant of discretion would be illusory, given that courts could drastically alter the regulations prescribed by dictating what pace of adjudication the regulations must permit.'" *Id.* (quoting *Labaneya v. U.S. Citizenship & Immigration Servs.*, 965 F.Supp.2d 823, 832 (E.D.Mich.2013)).

---

[4] This is not to say that the regulations are irrelevant. In *Kucana*, the jurisdiction stripping provision did not apply because the authority for the Board of Immigration Appeals to grant or deny a motion to reopen was not "specified" in the statute, but only in the Attorney General's regulation. Therefore, a regulation would be relevant to the extent it is consistent with the statutory provision.

[5] The Government cites to Section 1101(a)(15)(U) which grants the Secretary discretion in determining whether to issue a U visa. This authority is distinct from the pace of adjudicating such visas.

10

Moreover, the absence of any congressionally mandated deadline reinforces the conclusion that the pace of adjudication is discretionary. The Supreme Court has stated that judicial review "is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). This is intentional. If there is no meaningful standard against which to judge the agency's exercise of discretion, Congress intended such agency action to be unassailable. The flip side of this principle is that if Congress wanted to impose on immigration officials an affirmative obligation to perform an act within a certain time frame, it would have included such language in the relevant statute. *See also Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 2381 (2020) (noting a "fundamental principle" of statutory interpretation is that "absent provisions cannot be supplied by the courts," a principle which "applies not only to adding terms not found in the statute, but also to imposing limits on an agency's discretion that are not supported by the text"). Therefore, given the absence of any timeframe in Section 1184(a)(1) within which the Secretary of Homeland Security must adjudicate a U visa, the Court concludes that the requirements of 8 U.S.C. § 1252(a)(2)(B)(ii) are met here. Accordingly, the Court lacks jurisdiction over Plaintiff's Complaint.

## IV. CONCLUSION

For the reasons set forth above, this Court lacks subject matter jurisdiction over Plaintiff's complaint, and it will be dismissed with prejudice.

Dated: 5/31/2021

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

11